UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESTER BELL,

        Plaintiff,

v.

STATE OF MICHIGAN, *et al.*,

        Defendants.

_____/

Case No. 1:19-cv-233

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by *pro se* plaintiff Lester Bell ("Bell"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Bell originally named 23 defendants in the complaint. Most defendants have been dismissed. The four defendants remaining in this lawsuit, Inspector Dale Bonn, Sgt. Mario Cunningham, Correction Officer (CO) Wilson and CO Brown, have filed a motion for summary judgment (ECF No. 47).[1]

    **I.**    **Complaint**

The Court summarized Bell's present complaint as follows:

> Plaintiff alleges that, while he was housed at ICF [sic] during 2015 and then again during April, May, and June of 2018, several of the Defendants threatened to harm him or to have other prisoners harm him and then actually carried out those threats. Plaintiff alleges the rest of the Defendants were aware of the threats to Plaintiff's safety, and were deliberately indifferent to the risk of harm. Plaintiff

---

[1] A fifth defendant, named "Sergeant Jackson", who is listed on the docket sheet as "Unknown Jackson" has never been served. According to the MDOC, no person named Jackson worked at RMI during the relevant time period. *See* discussion, *infra*.

>claims that the threats and the deliberate indifference were retaliatory for conduct protected by the First Amendment: filing grievances.
>
>During June of 2018, Plaintiff was attacked by an unknown assailant. Plaintiff contends the attack was arranged by Brown, Wilson, or both. Plaintiff was transferred to the Duane Waters Health Center in Jackson, Michigan. He reported the threats to staff at that facility. When he was transferred, the MDOC moved Plaintiff to DRF. Plaintiff claims prisoners at DRF threatened [sic] because Defendants Brown and Wilson "had a 'green light' on Plaintiff's head." (Compl., ECF No. 1, PageID.29.)
>
>Plaintiff seeks a declaration that Defendants have violated his rights, an injunction prohibiting Plaintiff's placement at ICF [sic] or any facility where the Defendants are present; an injunction compelling proper treatment for Plaintiff's injuries, and millions of dollars in compensatory and punitive damages. . . .
>
>Plaintiff alleges that he informed Defendants Bonn, Cunningham, and Jackson of the threats from Brown, Wilson, and others and that he sought protection. Plaintiff alleges that each Defendant was aware of a risk of harm to Plaintiff but deliberately disregarded that risk and refused to protect him. Plaintiff's allegations, accepted as true, suffice to state an Eighth Amendment "failure to protect" claim.
>
>Plaintiff claims that the threats and eventual assaults were retaliatory for his filing of grievances or other complaints. . .
>
>Plaintiff's allegations suffice to state a retaliation claim with respect to Defendants Brown and Wilson; however, with respect to Defendants Bonn, Cunningham, and Jackson, Plaintiff has failed to show their deliberate indifference to the risk of harm was motivated by Plaintiff's protected conduct. Accordingly, he has failed to state a First Amendment retaliation claim against Defendants Bonn, Cunningham, and Jackson.

Opinion (ECF No. 8, PageID.232-233, 240).  While the Court's screening opinion refers to allegations of events which occurred at the MDOC's Ionia Correctional Facility (ICF) in Ionia, Michigan, the records reflect that the relevant events in 2018 occurred at a different MDOC facility in Ionia, the Michigan Reformatory (RMI), where defendants Bonn, Cunningham, Wilson and Brown worked in 2018.

Ultimately, the Court concluded that, "Plaintiff's Eighth Amendment, First Amendment retaliation, and state law claims against Defendants Brown and Wilson and Plaintiff's Eighth Amendment and state-law claims against Defendants Bonn, Cunningham, and Jackson remain in the case." *Id*. at PageID.241.

## II.     Motion for summary judgment

### A.     Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment claims

Bell seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations and quotation marks omitted). "Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Given this environment, it is well established that "prison officials have a duty to

4

protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis omitted).  "A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions[.]" *Id*. at 844-45 (internal citations omitted).  *See, e.g., Gilland v. Owens*, 718 F. Supp. 665, 688 (W.D. Tenn. 1989) (observing that the violent tendencies of inmates is not within the control of jail officials).

However, courts recognize that "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).

> In order to establish liability under the Eighth Amendment for a prison official's failure to protect her, an inmate must demonstrate that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the risk" and "disregard [ed] that risk by failing to take reasonable measures to abate it." *Id*. at 829, 847, 114 S.Ct. 1970.

*Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).  "Generally, a single isolated attack on an inmate cannot give rise to a deliberate indifference claim because the inmate will be unable to show that officials were consciously aware of the risk of an attack." *McDuff v. Addis*, No. 1:17-cv-912, 2018 WL 3239491 at *3 (W.D. Mich. July 3, 2018) (citing *Lewis v. McLennan*, 7 Fed. Appx. 373, 375 (6th Cir. 2001) (which affirmed dismissal of an Eighth Amendment claim because the plaintiff had not alleged any specific facts which would show that he was in danger of being assaulted by other prisoners). *See Stewart v. Love*, 696 F.2d 43, 44-45 (6th Cir. 1982) (a single, isolated attack was insufficient to state a failure to protect claim).  Finally, the Supreme Court has instructed that "prison officials who actually knew of a substantial risk to inmate health or safety

may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

### 1. Bell's complaint and statement of facts

Bell alleged that CO Brown and CO Wilson arranged a prisoner to attack Bell and that Inspector Bonn and Sgt. Cunningham were allegedly aware of the threats. As an initial matter, Bell attempted to file a verified complaint containing the "Affidavit of Lester Bell" (ECF No. 1, PageID.39) and a "Statement of Facts and Sworn Affidavit of Lester Bell" (ECF No. 1-1, PageID.43-52). *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).

"To constitute a valid affidavit, a document must be (1) a written or printed declaration or statement of facts, (2) made voluntarily, and (3) confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). Here, Bell's complaint and statement are not affidavits because they do not comply with the statute regarding the administration of an oath. Both of these documents include a recitation that "Plaintiff, Lester Bell, being duly disposed [sic] and sworn, states under the penalty of perjury that all of the above statements of facts are true and correct to the best of my ability, knowledge and belief." PageID.40, 52. Both documents also include Bell's signature above a jurat stating "SUBSCRIBED AND SWORN BEFORE ME, Notary Public". PageID.40, 52. The stamp and signature of notary public Kyle Treptow is on a separate area of the page. *Id*. Neither Bell's nor Treptow's signatures are dated.

6

With respect to a notary jurat, M.C.L. § 55.265(a) states that

> "Jurat" means a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in the presence of the notary public a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed record.

In addition, M.C.L. § 55.287(2)(e) requires that a notarial act include a statement conveying "[t]he date the notarial act was performed."[2] Here, the notarial acts do not meet the statutory requirement because they do not include that date that Bell took an oath or affirmation vouching for the truthfulness of the signed record. Bell's complaint and statement fail to meet the third element of an affidavit because the documents were not "confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." *Knobloch*, 2002 WL 1360388 at *2. "A purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all." *Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930), quoting *Clarke v. Wayne Circuit Judge*, 193 Mich. 33; 159 NW 387 (1916) (syllabus).

Next, even if the documents were properly executed affidavits, they do not create a genuine issue of material fact on summary judgment. Neither document is based on Bell's personal knowledge. In both his complaint and statement, Bell swears "that all of the above statements of facts are true and correct to the best of my ability, knowledge and belief."

---

[2] M.C.L. § 55.287(2) provides in pertinent part,

"On each record that a notary public performs a notarial act and immediately near the notary public's signature, as is practical, the notary public shall print, type, stamp, or otherwise imprint mechanically . . . all of the following in this format or in a similar format that conveys all of the same information: (a) The name of the notary public exactly as it appears on his or her application for commission as a notary public. (b) The statement: 'Notary public, State of Michigan, County of _____.'. (c) The statement: 'My commission expires _____.'. (d) If performing a notarial act in a county other than the county of commission, the statement: 'Acting in the County of _____.'. (e) The date the notarial act was performed."

PageID.40, 52. Summary judgment cannot be granted on facts based upon a person's "belief." *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) ("statements made on belief or on information and belief, cannot be utilized on a summary-judgment motion") (internal quotation marks omitted).

Finally, the Court does not construe Bell's two documents as unsworn declarations under perjury submitted pursuant to 28 U.S.C. § 1746 (2), which provides that in any matter which

> is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . or affidavit, in writing of the person making the same . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration . . . or statement, in writing of such person which is subscribed by him, as true under penalty of perjury.

Such statements must be made in substantially the following form, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, Bell did not declare that the statements are "true and correct" as required by the statute. Rather, Bell placed qualifications on the truthfulness of the facts recited in the documents, stating "that all of the above statements of facts are true and correct *to the best of my ability, knowledge and belief*." PageID.40, 52 (emphasis added).

### 2. Prisoner Trimble

It is undisputed that in June 2018, Bell was attacked at RMI by prisoner Jaylin Trimble. The attack is documented in a misconduct report which charged Trimble with assault and battery. Specifically, on June 28, 2018, at 1306 hours on the "main walkway", Trimble struck Bell "several times with closed fists knocking Bell to the ground." *See* Misconduct Report (ECF No. 48-7, PageID.550). The incident was witnessed by RMI Staff Member non-party R. Bachert, who identified both prisoners. *Id*. Trimble later pled guilty. *See* Misconduct Hearing Report

(ECF No. 48-7, PageID.551); Trimble guilty plea (ECF No. 48-7, PageID.552).  Neither the misconduct report nor the hearing report indicate that RMI staff were involved in this incident.

Later, Trimble executed an affidavit which stated that he acted alone:

3. In June of 2018 I was incarcerated at the Michigan Reformatory, located in Ionia, Michigan.

4. In June of 2018 Prisoner Bell and I had a conversation.

5. During that conversation, there was a misunderstanding between Prisoner Bell and I.

6. Prisoner Bell threatened to harm me, so I fought Prisoner Bell.

7. I was not offered payment, goods, or any other benefit by any person to fight Prisoner Bell. This fight was solely because of a disagreement between Prisoner Bell and myself.

8. This was the only altercation I have ever had with Prisoner Bell.

Trimble Aff. (ECF No. 48-8, PageID.557).  Both the misconduct records and Trimble's affidavit establish that Trimble acted alone, with no evidence that RMI staff was involved in Trimble's spontaneous attack.

In his response, Bell acknowledged that Trimble was the "unknown assailant" who assaulted him in June 2018.  Bell submitted another affidavit in which he states that Trimble's affidavit is false and that "[a]s I leave the chow how [sic] Mr [sic] Trimble follows me and assaults me from behind without any misunderstanding or conversation" and that Trimble's version of events is false and refuted by the "camera footage." Bell Aff. (ECF No. 58, PageID.615).

Bell's most recent statement is neither an affidavit nor a declaration sufficient to rebut the facts stated in Trimble's affidavit.  In one portion of the document, Bell states that "If sworn as a witness, I can testify competently to the facts contained within this affidavit."  *Id*.  At

9

the end of the document, Bell states, "I declare under penalty of perjury that the following statements are true best [sic] knowledge and belief." *Id*. The document does not have a notary jurat and there is no evidence that Bell made a sworn statement before a notary. In this regard, the notary public Chad C. Battle included a handwritten statement, "witness signature only." *Id*. This document, which lacks a notary jurat and is based on "knowledge and belief" is not an affidavit which can create a genuine issue of material fact to defeat defendants' motion for summary judgment. *See* discussion in § II.B.1. In addition, this statement does not meet the requirements for an unsworn declaration under 28 U.S.C. § 1746. *Id*.

Finally, Bell does not present evidence connecting defendants and Trimble. Trimble pled guilty to striking Bell "several times with closed fists" in a hallway. Bell presents no evidence that defendants ordered the attack.

Based on this record, Bell has failed to present evidence that CO Brown and CO Wilson arranged to have Trimble attack Bell on June 28, 2018, that Inspector Bonn and Sgt. Cunningham were aware of the arrangement, or that any of the defendants were put on notice of Trimble's impending attack. Trimble's single, spontaneous, isolated attack does not form the basis of an Eighth Amendment claim against defendants Bonn, Wilson, Brown and Cunningham. *See Stewart*, 696 F.2d at 44-45; *Lewis*, 7 Fed. Appx. at 375; *McDuff*, 2018 WL 3239491 at *3. Accordingly, defendants' motion for summary judgment should be granted as to the Eighth Amendment claim.

    **C.**    **First Amendment Retaliation**

The gist of Bell's retaliation claim is that CO Wilson and CO Brown recruited an unknown assailant (whom Bell now identifies as Trimble) to assault him in retaliation for Bell

filing grievances. To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendants contend that Bell's First Amendment retaliation claim fails because he wrote frivolous grievances which were not "protected conduct" for purposes of a retaliation claim. *See* Defendants' Brief (ECF No, 48 at PageID.493-494). *See, e.g.*, *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (while filing grievances through the inmate grievance mechanism is protected conduct under the First Amendment, the right to file grievances is protected only insofar as the grievances are not frivolous); *King v. Zamiara*, 6080 F.3d 686, 699 (6th Cir. 2012) ("Abusive or manipulative use of a grievance system would not be protected conduct."). In support of their contention, defendants note that Bell admitted his intent to file grievances as a matter of course, stating in a grievance interview at RMI that, "I'm writing more grievances till I get out of this shit hole." *See* Grievance RMI-18-05-0906-26z (ECF No. 1-1, PageID.68). While defendants have presented evidence that Bell expressed an intent to file frivolous grievances, they have not established that all of Bell's grievances filed at RMI were frivolous.

However, even if the Court assumes that one or more of Bell's grievances were protected conduct, his retaliation claim fails because there is no evidence of either the second element (an adverse action) or the third element (a causal connection between the adverse action and the protected conduct). As to the second element, Bell cannot establish that Trimble's attack

11

was an adverse action attributable to defendants because there is no evidence that defendants arranged the attack. As to the third element, Bell cannot establish that Trimble's attack was motivated by Bell's protected conduct of filing grievances. Trimble himself stated that he fought Bell "solely because of a disagreement between Prisoner Bell and myself." *See* Trimble Aff. at PageID.557. Accordingly, defendants' motion for summary judgment should be granted as to Bell's claim that CO Brown and CO Wilson retaliated against him.

### D. Eleventh Amendment immunity

In his complaint, Bell states that he is suing defendants in their official capacities. *See* Compl. at PageID.3-8. Bell's claim for monetary damages against defendants in their official capacity is barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, defendants' motion for summary judgment should be granted as to the "official capacity" claims.

### E. Qualified Immunity

Defendants set forth the legal standard for qualified immunity, but do not develop their claim. Rather, defendants simply conclude that "For the reasons stated in the arguments set forth above, Defendants are entitled to qualified immunity because Bell has not demonstrated that any Defendant violated any clearly established constitutional or statutory right." Defendants' Brief (ECF No. 48, PageID.499). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."

12

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the Court deems this argument waived.

### F. Sergeant Jackson

One of the 23 defendants listed in Bell's complaint was "Sergeant Jackson." Compl. at PageID.1. While Bell lists Jackson in the case caption, he does not identify this individual as a defendant in the body of the complaint. *Id*. at PageID.3-8. There is no evidence that such an individual exists. At the outset of the case, MDOC officials advised the United States Marshals Service that "there was no employee with the last name Jackson during the timeframe of the incident in the complaint." *See* Unexecuted Summons (ECF No. 39). Bell has taken no action to identify "Sergeant Jackson". Accordingly, defendant Jackson should be dismissed for lack of prosecution.

### G. State law claims

Bell's complaint includes vague references to violations of state law, including: breach of fiduciary duties and neglect of unspecified statutory, lawful and legal duties (*see* Count I, PageID.31); and, unspecified violations of his "State Constitutional" rights (*see* Count IV, PageID.33). The Court exercised its supplemental jurisdiction over Bell's state law claims pursuant to 28 U.S.C. § 1367, presumably because these claims were intimately related to the alleged federal constitutional violations. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy").

If the Court adopts the recommendation to grant defendants' motion for summary judgment, then I further recommend that Bell's state law claims be dismissed. Pursuant to 28

13

U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c).

Here, neither the interests of judicial economy nor the avoidance of multiplicity of litigation outweighs this Court's concern over needlessly deciding state law issues. The undersigned finds no reason for this Court to hold a trial addressing Bell's vague state law claims, some of which involve violations of unnamed State Constitutional rights. To the extent that Bell's complaint alleges any state law claims, those claims should be brought in state court. Accordingly, if the Court adopts the recommendation granting defendants' motion for summary

judgment on all remaining federal claims, then the Court should dismiss Bell's state law claims as well.

### III. Recommendation

Accordingly, I respectfully recommend that defendants Bonn, Cunningham, Brown and Wilson's motion for summary judgment (ECF No. 47) be **GRANTED**.

I further recommend that the unserved defendant Jackson be **DISMISSED** for want of prosecution.

I further recommend that plaintiff's state law claims be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that this case be **TERMINATED**.

Dated: August 22, 2022  /s/ Ray Kent
RAY KENT
United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).